# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**WENDY C. DEWEES,**

      **Plaintiff,**

**vs.**                                                    **Case No. 1:16cv380-WTH/CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social**
**Security,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

      This is a Social Security case referred to the undersigned United

States Magistrate Judge for a report and recommendation pursuant to 28

U.S.C. § 636(b) and Local Rule 72.2(D).   This case is before the Court

pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Acting

Commissioner re-affirming a prior decision that Plaintiff's disability ceased

as of October 1, 2012, the date of medical improvement, and the Plaintiff

has not become disabled again since that date.   Tr. 9.[1]   (Plaintiff's original

---

[1]  Citations to the record transcript/administrative record, ECF Nos. 11 through 11-14, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

disability began on November 30, 2004, with a primary diagnosis of borderline intellectual functioning and anxiety related disorders.    Tr. 27. 89, 99.)

The issue before the Court is whether the determination that Plaintiff's disability ceased on October 1, 2012, is correct.    After careful consideration of the record, it is recommended that the decision of the Acting Commissioner be affirmed.

## I.  Procedural History

On October 10, 2008, Plaintiff was found disabled beginning November 30, 2004.    Tr. 27, 89.    On October 2, 2012, Plaintiff was notified that the agency determined that she had medical improvement and that her benefits would cease.    Tr. 28, 90-93, 130-32.    Plaintiff filed a request for reconsideration, Tr. 136, and, after an informal hearing on February 21, 2013, a Disability Hearing Officer (DHO) determined that Plaintiff had medical improvement and was no longer disabled.    Tr. 94-95, 144-49; *see* Tr. 151-58 (Mar. 15, 2013, DHO decision); Tr. 159-68.

Plaintiff requested a hearing by an Administrative Law Judge (ALJ) and a video hearing was held on December 18, 2013, with Plaintiff appearing in Gainesville, Florida, and ALJ K. Barlow presiding over the

hearing from Jacksonville, Florida.   Tr. 45-70, 99.   An impartial vocational expert testified and Plaintiff was represented by Pamela C. Dunmore, a non-attorney.   *Id.*; Tr. 175-76.   On February 13, 2014, ALJ Barlow issued a decision denying Plaintiff's claim deciding that Plaintiff's disability ended on December 31, 2012, and she had not become disabled again since that date.   Tr. 99-108.   On September 1, 2015, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the matter to ALJ Barlow with instructions.   Tr. 115-19.

On January 13, 2016, ALJ Barlow held a supplemental video hearing. Plaintiff appeared in Gainesville, Florida, and the ALJ presided over the hearing from Jacksonville, Florida.   Tr. 71-87.   Another impartial vocational expert testified.   Plaintiff was represented by Ms. Dunmore, an attorney.   Tr. 24, 71-87, 428.   On February 11, 2016, ALJ Barlow issued a second decision, identified the issues to be considered on remand, and denied Plaintiff's claim.   Tr. 24-37.

ALJ Barlow made several findings:

1.   "The most recent favorable medical decision finding that the claimant was disabled is the determination dated October 10, 2008. This is known as the 'comparison point decision' or CPD."   Tr. 27.

2.   "At the time of the CPD, the claimant had the following medically determinable impairments: borderline intellectual functioning and

generalized anxiety disorder.   These impairments were found to result in an inability to understand, remember, and carry out simple instructions, or to perform unskilled work on a sustained basis."   *Id.*

3.   "The claimant attained age 18 on December 2, 2004, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18.   The claimant was notified that she was found no longer disabled as of October 2, 2012, based on a redetermination of disability under the rules for adults who file new applications."   Tr. 28.

4.   "Through October 1, 2012, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity." *Id.*

5.   "The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through October 1, 2012.   Thus, the claimant continued to have the same impairments that she had at the time of the CPD."   *Id.*

6.   "Since October 1, 2012, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1."   *Id.*   The ALJ considered Listings 12.02 and 12.06. *Id.*   The ALJ determined that Plaintiff had *moderate* restrictions in activities of daily living; *moderate* difficulties in social functioning and with regard to concentration, persistence, or pace; and *no* episodes of decompensation, which have been of extended duration.   Tr. 28-29.   "Because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied."   Tr. 29.   The ALJ also determined that the "paragraph C" criteria were not satisfied.   *Id.*

7.   "Medical improvement occurred as of October 1, 2012."   *Id.* The ALJ noted:

The medical evidence supports a finding that, as of October 1, 2012, there had been a decrease in medical severity of the claimant's generalized anxiety disorder. It is noted at this juncture that borderline intellectual functioning is a static impairment and is not subject to medical improvement. At CPD, the claimant's mood was anxious and depressed, her thought content was very simple and concrete, and her judgment was very poor. Her language skills at CPD were also very limited.

Currently, the evidence shows that while the claimant is still somewhat anxious, her mood is euthymic. She has logical and goal-oriented thought processes. Her language skills are appropriate and her judgment is reasonable according to the recent psychological consultative examination. Records from her treating source show that most of the claimant's issues stem from an unwillingness to work. The treating source also notes that the claimant's condition improved greatly with medication. With an IQ of 77, she appears to function in the borderline range of intelligence, is able to drive independently and help with household chores.

Tr. 30.

8. "[A]s of October 1, 2012, the claimant had the residual functional capacity [RFC] to perform a full range of work at all exertional levels but with simple, repetitive tasks; no exposure to the public; and, no independent goal-setting judgments."[2] *Id.*

---

[2] On remand, the ALJ was required to consider Plaintiff's RFC during the entire period at issue. Tr. 24. An RFC is the most a claimant can still do despite limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. §§ 404.1546(c); 416.946(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996, rescinded eff. Mar. 27, 2017) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant

As noted below, on October 25, 2016, the Appeals Council modified the RFC:

> In place of the [RFC] in the hearing decision, the Appeals Council adopts the [RFC] in the record that was incorporated into the hypothetical question the Administrative Law Judge posed to the vocational expert at the hearing held on January 13, 2016. Specifically, the Council adopts the [RFC] finding the claimant "capable of performing at all exertional levels but needs simple, routine tasks with no exposure to the public, only occasional collaboration with coworkers and supervisors, in positions where there is no need for independent goal setting" (Testimony from 10:25:14 AM to 10:25:45 AM). This [RFC] includes the additional functional limitations of "no exposure to the public, only occasional collaboration with coworkers and supervisors" that more fully accommodate the social functioning restrictions caused by the claimant's severe mental impairments (Testimony from 10:25:30 AM to 10:25:36 PM [sic]) [Tr. 83].

> . . . .

> At the hearing held on January 13, 2016, the Administrative Law Judge posed a hypothetical question to the vocational expert with the following [RFC] finding the claimant "capable of performing at all exertional levels but needs simple, routine tasks with no exposure to the public, only occasional collaboration with coworkers and supervisors, in positions where there is no need for independent goal setting" (Testimony from 10:25:14AM to 10:25:45 AM) [Tr. 83].

---

nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered the decision. *See generally* <u>Bagliere v. Colvin</u>, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

The Appeals Council adopts the [RFC] posed by the Administrative Law Judge at the hearing in place of Finding 8 in the hearing decision as the additional functional limitations of "no exposure to the public, only occasional collaboration with coworkers and supervisors" more fully accommodate the claimant's moderate difficulties in social functioning.

Tr. 4, 6.

9. "The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's [RFC]." Tr. 35. "As of October 1, 2012, the claimant's impairments was [sic] severe." *Id.* "The claimant has no past relevant work." *Id.* On October 1, 2012, the claimant was a younger individual age 18-49." Tr. 36. "The claimant has a limited education and is able to communicate in English." *Id.* "Transferability of job skills is not an issue because the claimant does not have past relevant work." *Id.*

10. "As of October 1, 2012, considering the claimant's age, education, work experience, and [RFC], the claimant was able to perform a significant number of jobs in the national economy." *Id.* These jobs include laundry sorter, with an SVP of 2 and light exertion; kitchen helper, with an SVP of 2 and medium exertion; and maintenance cleaner, with an SVP of 2 and medium exertion. *Id.*[3]

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a); 416.968(a). A Specific Vocational Preparation (SVP) of 1 means "[s]hort demonstration only." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month." *Id.* "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* Unskilled work corresponds to an SVP of 1 and 2. SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these

The Appeals Council rejected part of the ALJ's step 5 determination and found, based on the vocational expert's testimony, that Plaintiff could perform other representative jobs in the national economy that are unskilled with an SVP of 1 *or* 2 at the medium exertional level. *See supra* at 14-15; Tr. 83-86.   The Appeals Council adopted "the testimony of the vocational expert at the hearing finding that a significant number of  jobs exist in the national economy that an individual with the  claimant's assessed residual functional capacity is capable of performing (Decision, pages 13 & 14)" [Tr. 36-37, 83-86].   On remand, the ALJ was required to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.   Tr. 24.

11.   "The claimant's disability ended as of October 1, 2012, and the claimant has not become disabled again since that date."   Tr. 37.

Thereafter, Plaintiff asked the Appeals Council to review the ALJ's

decision of February 11, 2016.   Tr. 4.   On August 25, 2016, the Appeals

Council provided notice of its proposed action.   Tr. 291-96.   On

September 26, 2016, Ms. Dunmore responded to the August 25th letter

opposing several of the proposed findings, arguing that "the severity of

---

basic work-related activities would severely limit the potential occupational base.   This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."   SSR 85-15, 1985 SSR LEXIS 20, at *11 (1985).   In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."   20 C.F.R. §§ 404.1567(b); 416.967(b).   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.   If someone can do medium work, we determine that he or she can also do sedentary and light work."   20 C.F.R. §§ 404.1567(c); 416.967(c).

[Plaintiff's] mental health problems would preclude all work irrespective of physical [RFC]."   Tr. 457*.*   Ms. Dunmore requested the Appeals Council to remand the claim "to the secession ALJ" to determine Plaintiff's "actual mental [RFC] taking into account her diagnosed mood and personality disorders."   *Id.*

On October 25, 2016, the Appeals Council issued its decision denying Plaintiff's claim.   Tr. 1-9, 19-20.   The Appeals Council adopted several of the ALJ's findings, but modified others as noted below. Importantly, the Appeals Council, modified, in part, ALJ Barlow's RFC determination.   *Compare* Tr. 30, Finding 8, *with* Tr. 4-6.   In addition, the Appeals Council rejected ALJ Barlow's determination at step 5 regarding the jobs that Plaintiff could perform, but determined that she could perform other jobs.   *Compare* Tr. 36-37, Finding 15, *with* Tr. 4-8.

The Appeals Council explained its decision.

The claimant asked the Appeals Council to review the Administrative Law Judge's decision dated February 11, 2016.   The hearing decision, dated February 11, 2016, indicated that the claimant's claim was for a Title II Period of Disability and Disability Insurance Benefits (Decision, page 1).    However, as indicated in the Remand Order, dated September 1, 2015, the claimant's actual claims were for a (Continuation of) Title II Child's Insurance Benefits and Title XVI Supplemental Security Income (Exhibit B9A, page 2).   The Appeals Council addresses this issue so that the claimant receives adjudication for both of the claimant's actual disability claims.

Additionally, in Finding 8 [Tr. 30], the hearing decision found, as of October 1, 2012, that the claimant had the [RFC] to perform a full range of work at all exertional levels but with simple, repetitive tasks; no exposure to the public; and, no independent goal-setting judgments (Decision, page 7) [Tr. 30].

In place of the [RFC] in the hearing decision, the Appeals Council adopts the [RFC] in the record that was incorporated into the hypothetical question the Administrative Law Judge posed to the vocational expert at the hearing held on January 13, 2016. Specifically, the Council adopts the [RFC] finding the claimant "capable of performing at all exertional levels but needs simple, routine tasks with no exposure to the public, only occasional collaboration with coworkers and supervisors, in positions where there is no need for independent goal setting" (Testimony from 10:25:14 AM to 10:25:45 AM).   This [RFC] includes the additional functional limitations of "no exposure to the public, only occasional collaboration with coworkers and supervisors" that more fully accommodate the social functioning restrictions caused by the claimant's severe mental impairments (Testimony from 10:25:30 AM to 10:25:36 PM [sic]) [Tr. 83].

Finally, the hearing decision found, at step five of the sequential evaluation, that the claimant was capable of performing the jobs of laundry sorter, kitchen helper, and maintenance cleaner based on the testimony of the vocational expert (Decision, pages 13 to 14). The Appeals Council finds that the jobs cited in the hearing decision were not based on the testimony of the vocational expert. However, the Appeals Council finds that there are jobs in the national economy that the claimant is capable of performing, based upon the claimant's age, education, work experience, residual functional capacity, and the vocational expert testimony at the hearing (Testimony from 10:25:46 AM to 10:27:36 AM).[4]

---

[4]   The ALJ told the vocational expert that Plaintiff "has some sheltered work.   So I just want to consider a hypothetical individual with an 11th grade education and no past work experience."   The ALJ posed the following hypothetical question: "We have an individual who is capable of performing at all exertional levels but needs simple,

The Appeals Council notes that the findings of the Council as well as the findings of the Administrative Law Judge that the Council is adopting are all in accordance with the sequential evaluation process for Continuing Disability Review (CDR) cases (20 CFR 404.1594 and 416.994).

On August 25, 2016, the Appeals Council notified the claimant and the representative that it had granted the request for review.    In that notice, the Council proposed to issue a decision finding that the claimant is not entitled to or eligible for benefits under the Social Security Act.    The Council also notified the claimant and the representative that it would consider any comments or new and material evidence that the claimant or the representative submitted within 30 days from the date of the notice.    Comments have been received and considered [Tr. 291-94, 456-57].

The Appeals Council has entered into the record the Council's notice of proposed action and arguments, which are listed in the Supplemental List of Exhibits attached to this decision [Tr. 10, Ex. B30B, Tr. 291-94; Ex. B33E, Tr. 456-57].

In a brief, dated September 26, 2016, the claimant's representative argued that the hearing decision failed to adequately address the claimant's severe mental impairments, that the claimant has not experienced medical improvement, and that the claimant's mental health problems preclude all work [Tr. 456-57].    The Appeals Council has considered these arguments and found them to be without merit.    The hearing decision adequately considered the claimant's severe mental impairments and reasonably relied upon

---

routine tasks with no exposure to the public; only occasional collaboration with coworkers and supervisors; in a position where there's no need for independent goal setting."   Tr. 83.   The vocational expert identified several representative jobs, Tr. 83-84, that were adopted by the Appeals Council.   Tr. 7.   In response to a question posed by Ms. Dunmore, the vocational expert testified that "sheltered employment is typically not competitive employment" "because of all that extra supervision required sometimes the hours are a lot less.   Most of the time, the pay scale is not up to minimum wage. There are times it is but a lot of times it's not."   Tr. 86.

the medical opinions in the record in determining the "paragraph B" criteria.   Furthermore, the hypothetical question posed to the vocational expert at the hearing, which the Council is adopting for the [RFC], incorporates functional limitations that adequately accommodate the claimant's restrictions due to her severe mental impairments (Testimony from 10:15:14 AM to 10:25:45 AM).   The Council further finds that the hearing decision's findings regarding medical improvement are also supported by substantial evidence (Decision, pages 6, 7, and 12) [Tr. 29-30, 35].

Additionally, the claimant's representative requested oral arguments via video teleconference or telephonically if the Appeals Council was not going to issue a remand order [Tr. 457].   The Council has considered this request and the Council denies this request.

The Appeals Council adopts the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable.

The Appeals Council adopts the finding of the Administrative Law Judge (ALJ) that the most recent favorable medical decision finding that the claimant was disabled is the determination dated October 10, 2008, known as the "comparison point decision" or CPD (Decision, page 4) [Tr. 27].

The Appeals Council adopts the finding of the ALJ that at the time of the CPD, the claimant had the following medically determinable impairments: borderline intellectual functioning and generalized anxiety disorder (Decision, page 4) [Tr. 27].   Furthermore, the Council adopts the finding of the ALJ that as of October 1, 2012, the claimant's impairments were still severe (Decision, page 12) [Tr. 35].

The Appeals Council adopts the finding of the ALJ that through October 1, 2012, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity (Decision, page 5) [Tr. 28]

The Appeals Council adopts the finding of the ALJ that at the time of the CPD, the claimant had the following medically determinable impairments: borderline intellectual functioning and generalized anxiety disorder (Decision, page 4) [Tr. 27].   The Council adopts the finding of the ALJ that medical evidence establishes that the claimant did not develop any additional impairments after the CPD through October 1, 2012, thus the claimant continued to have the same impairments that the claimant had at the time of the CPD (Decision, page 5) [Tr. 28].   The Council adopts the finding of the ALJ that as of October 1, 2012, the claimant's impairments were still severe (Decision, page 12) [Tr. 35].

The Appeals Council adopts the finding of the ALJ that since October 1, 2012, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CPR Part 404, Subpart P, Appendix 1 (Decision, page 5) [Tr. 28].

At the hearing held on January 13, 2016, the Administrative Law Judge posed a hypothetical question to the vocational expert with the following [RFC] finding the claimant "capable of performing at all exertional levels but needs simple, routine tasks with no exposure to the public, only occasional collaboration with coworkers and supervisors, in positions where there is no need for independent goal setting" (Testimony from 10:25:14 AM to 10:25:45 AM) [Tr. 83].

The Appeals Council adopts the [RFC] posed by the Administrative Law Judge at the hearing in place of Finding 8 in the hearing decision as the additional functional limitations of "no exposure to the public, only occasional collaboration with coworkers and supervisors" more fully accommodate the claimant's moderate difficulties in social functioning.[5]

The Appeals Council adopts the finding of the ALJ that medical improvement occurred as of October 1, 2012 and the claimant's

---

5   *See supra* at n.4.

medical improvement is related to the ability to work because it resulted in an increase in the claimant's [RFC] (Decision, pages 6 & 12) [Tr. 29, 35].

The Appeals Council adopts the finding of the ALJ that the claimant has no past relevant work (Decision, page 12) [Tr. 35].  Once it is determined that the claimant has no past relevant work, the burden of proof shifts to the Commissioner to show that other jobs existed in significant numbers in the national economy that the claimant could perform, given the claimant's [RFC], age, education, and work experience.

The record shows that the claimant was a younger individual as of October 1, 2012, and that the claimant has a limited education (Decision, page 13) [Tr. 36].   An individual with the claimant's vocational factors and the ability to perform a full range of work at all exertional levels would normally be required to be found "not disabled" pursuant to Medical-Vocational Rule 204.00.   However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been reduced by additional limitations.

To determine the extent to which the additional limitations would erode the unskilled occupational base, the Administrative Law Judge asked a vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and [RFC] capacity.   The Appeals Council notes that in response to the [RFC] posed by the Administrative Law Judge at the hearing, the vocational expert identified the following four occupations in his testimony that the claimant could still perform: Hand Packager (Dictionary of Occupational Titles (DOT) #920.587-018; medium exertional level and unskilled, Specific Vocational Preparation (SVP) level 2), Cleaner, Industrial (DOT #381.687-018; medium exertional level and unskilled, SVP level 2), Carcass Washer (DOT #525.687-122; medium exertional level and unskilled, SVP level 1), and Laborer, Stores (DOT #922.687-058; medium exertional level and unskilled, SVP level 2) (Testimony from 10:25:46 AM to 10:27:36 AM) [Tr. 83-86].   The vocational expert

testified that for Hand Packager there were 94,707 jobs existing in the national economy, for Cleaner, Industrial there were 66,475 jobs existing in the national economy, for Carcass Washer there were 26,674 jobs existing in the national economy, and for Laborer, Stores there were 101,820 jobs existing in the national economy (Testimony from 10:25:46 AM to 10:27:36 AM) [Tr. 83-86].   In support of Findings 15 & 16 in the hearing decision, the Appeals Council adopts the testimony of the vocational expert at the hearing finding that a significant number of jobs exist in the national economy that an individual with the claimant's assessed [RFC] is capable of performing (Decision, pages 13 & 14) [Tr. 36-37, 83-86].[6]

Accordingly, based on the testimony provided by the vocational expert at the hearing held on January 13, 2016, the Appeals Council finds that since October 1, 2012, the date of medical improvement, the claimant has not been disabled within the framework of Medical-Vocational Rule 204.00 for both the claimant's Title II Child Disability Benefits claim and the claimant's Title XVI Supplemental Security Income claim (20 CFR 404.1594(f)(8) & 416.994 (b)(5)(vii)).

Tr. 4-7.   In addition, the Appeals Council made the following findings:

1. The claimant is the child of the wage earner, was not married at the time the application for benefits was made and is still unmarried.    The period for which the claimant must establish that she is disabled ends with the attainment of age 22.

   The claimant has not engaged in substantial gainful activity since October 1, 2012.

2. The most recent favorable medical decision finding that the claimant was disabled is the determination dated October 10, 2008, known as the "comparison point decision" or CPD.

3. The claimant has the following severe impairments: borderline

---

6    *See supra* at n.3.

intellectual functioning and generalized anxiety disorder, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

4. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through October 1, 2012, thus the claimant continued to have the same impairments that the claimant had at the time of the CPD.

5. The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: capable of performing at all exertional levels but needs simple, routine tasks with no exposure to the public, only occasional collaboration with coworkers and supervisors, in positions where there is no need for independent goal setting.

6. The claimant has medically determinable impairments that could reasonably be expected to produce the claimant's alleged symptoms, but for the reasons identified in the body of this decision, the limitations imposed by the claimant's impairments do not reduce the claimant's functioning to the extent alleged by the claimant.

7. Medical improvement occurred as of October 1, 2012 and the claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's [RFC].

8. The claimant has no past relevant work.

9. The record shows that the claimant was a younger individual as of October 1, 2012, and that the claimant has a limited education.

10. An individual with the claimant's vocational factors and the ability to perform a full range of work at all exertional levels would normally be required to be found "not disabled" pursuant to Medical-Vocational Rule 204.00. The claimant is capable of performing representative occupations such as, Hand Packager

Cleaner, Industrial, Carcass Washer and Laborer, Stores.    Thus,
a significant number of jobs exist in the national economy that an
individual with the claimant's assessed [RFC] is capable of
performing.

11.  Since October 1, 2012, the date of medical improvement, the
claimant has not been disabled within the framework of Medical-
Vocational Rule 204.00 for both the claimant's Title II Child
Disability Benefits claim and the claimant's Title XVI
Supplemental Security Income claim (20 CFR 404.1594(f)(8) &
416.994(b)(5)(vii)).

Tr. 7-8.   The Appeals Council decided that Plaintiff's "disability ceased on

October 1, 2012, the date of medical improvement, and [Plaintiff] has not

become disabled again since that date" and that Plaintiff is not entitled to or

eligible for Supplemental Security Income payments or child's insurance

benefits (disability).   Tr. 9.

On December 23, 2016, Plaintiff filed a Complaint requesting judicial

review of the Acting Commissioner's final decision.   ECF No. 1.   Both

parties filed memoranda of law, ECF Nos. 19, 22, which have been

considered.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is

supported by substantial evidence in the record and premised upon correct

legal principles.   42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131

(11th Cir. 1986).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).   "The Commissioner's factual findings are conclusive if supported by substantial evidence."   Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[7]

In reviewing whether Plaintiff continued to be disabled, the ALJ was required to follow a sequential evaluation process outlined in the regulations.   *See* 20 C.F.R. §§ 404.1594(f)(1)-(9); 416.994(b)(5)(i)-(vii); *see also* Tr. 24-27.

---

[7]   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).   "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.   A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"   Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity."   Klaes v. Comm'r, Soc. Sec. Admin., 499 F. App'x 895, 896 (11th Cir. 2012) (per curiam) (unpublished) (citations omitted); *see* 20 C.F.R. §§ 404.1594; 416.994.   "Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled or continued to be disabled.   20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i).   "A determination that there has been a decrease in medical severity must be based on changes (improvements) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s) (see § 404.1528)."   20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i).   "To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with the new medical evidence." Gombash v. Comm'r, Soc. Sec. Admin., 566 F. App'x 857, 859 (11th Cir. 2014) (unpublished) (citation omitted).   In fact, "a comparison of the

original medical evidence and the new medical evidence is necessary to make a finding of medical improvement." Freeman v. Heckler, 739 F.2d 565, 566 (11th Cir. 1984) (per curiam) (citing Vaughn v. Heckler, 727 F.2d 1040, 1043 (11th Cir. 1984)).   Without such comparison, no adequate finding of medical improvement can occur.   Vaughn, 727 F.2d at 1043. The failure to make such comparison requires reversal and remand for application of the proper legal standard.   *Id.*; *see* Klaes, 499 F. App'x at 896 (citing Vaughn and noting that, if the ALJ fails to evaluate the prior medical evidence and make the comparison to the new medical evidence, courts must reverse and remand for application of the proper legal standard).

## IV.   **Legal Analysis**

A.

Plaintiff argues the Acting Commissioner erred in finding that Plaintiff's disability ceased on October 1, 2012, because substantial evidence shows "that at all relevant times [Plaintiff] Dewees' borderline IQ and mental health issues have remained absolutely the same" before and after October 10, 2008, the CPD, continuing after October 1, 2012, the date the Plaintiff's disability ended according the Commissioner.   ECF No.19 at

31.   In short, Plaintiff argues that substantial evidence does not support the Acting Commissioner's conclusion that Plaintiff had significant medical improvement after October 1, 2012, to justify termination of her disability benefits.   ECF No. 19 at 24-31.

The Acting Commissioner restates Plaintiff's arguments as a "challenge to whether substantial evidence supports the Appeals Council's RFC determination."   ECF No. 22 at 6 n.6 (citation omitted).

## B.

In the February 11, 2016, decision after remand, ALJ Barlow determined, in part, that Plaintiff obtained medical improvement as of October 1, 2012, and began her assessment of Plaintiff's RFC with Plaintiff's allegation "that she is unable to work due to limitations from borderline intellectual functioning and generalized anxiety disorder." Tr. 29-30.   The ALJ concluded that "the medical evidence of record does not support these allegations."   *Id.*

The ALJ considered Plaintiff's testimony during the hearings held on December 18, 2013, and January 13, 2016.   Tr. 30-31.   The ALJ noted, in part, that Plaintiff testified "she worked for a year in 2014 in a sheltered workplace sanding furniture," but "left that job because the instructor was

yelling at her."   Tr. 31.   Plaintiff testified "she tried to get her GED, but was unable to pass the math portion of the test."   She was looking for part-time work at the time of the January 13, 2016, hearing.   *Id.*

The ALJ summarizes the medical evidence of record including the consultative psychological examination of Diana M. Benton, Ph.D., in September 2012, Tr. 31, 553-56; patient notes from Robert Balbis, D.O., from approximately January 2011 through December 2012, Tr. 31-32, 34; *see, e.g.,* Tr. 588, 622; a January 31, 2014, assessment at Meridian Behavioral Healthcare (Meridian) with Linda Skalsky, MSN, Tr. 32, 35, 727-30; an October 8, 2015, initial psychosocial evaluation by Courtney D. Stahl, Ph.D., Tr. 32, 35, 731-37; and December 24, 2012, evaluations (Mental Residual Functional Capacity Assessment and Psychiatric Review Technique) by State agency evaluator, Gary W. Buffone, Ph.D., ABPP. Tr. 34-35, 598-615.   On remand, the ALJ was required to further evaluate the opinions of Drs. Benton and Buffone.   Tr. 24.

## C.

Dr. Balbis, a treating physician, examined and treated Plaintiff from March 24, 2010, Tr. 550-51 (established care), through December 2012, *see* Tr. 524-51, 584-97, 622-636.   Tr. 31-32, 34.   As noted by the ALJ, Dr.

Balbis was "familiar with the claimant's subjective complaints and with the effect of her medications" and "opined that the claimant was much better when she was compliant with her medication and that most of the claimant's problems resulting from her unwillingness to work."   Tr. 34. Dr. Balbis treated Plaintiff with Wellbutrin and Lamictal and in May, July, and November 2011, noted that Plaintiff was stable on Lamictal. Tr. 31; *see* Tr. 525, 527, 529.   She did not return for care until October 10, 2012.   Tr. 588-59.   Plaintiff reported her SSI benefits had ceased.   *Id.* She also reported that she did "not want to work at all with or without" medication.   Dr. Balbis modified Plaintiff's medication regimen to include Seroquel and Lithium.   Tr. 32.   The ALJ noted that a December 5, 2012, examination with Dr. Balbis revealed no significant abnormalities.   Tr. 32, 584, 622 (same).   Dr. Balbis also noted that she "will look for work soon." Tr. 585, 623 (same).

In later patient notes (Palms Medical Group), it is noted that Plaintiff was oriented to time, place, and situation and that Plaintiff demonstrates the appropriate mood and affect.   *See, e.g.*, Tr. 638 (Dec. 17, 2013); Tr. 670 (Apr. 3, 2014).

The ALJ noted that Plaintiff's "mother reported that the claimant's

mental health symptoms were significantly improved with medications.
Dr. Balbis opined that the claimant was much better when she was
compliant with her medication and opined that most of the claimant's
problems resulted from her unwillingness to work."   Tr. 32; *see* Tr. 584-85,
622-23 (same).   The ALJ gave Dr. Balbis' opinion "significant weight
because he has a long-term relationship with the claimant" and because
"his opinion is well supported by the medical evidence and the record as a
whole."   Tr. 34.

On September 26, 2012, Plaintiff underwent a consultative
psychological examination with Dr. Benton.   Tr. 31, 553-56.   The ALJ
summarized Dr. Benton's findings, Tr. 31, 34, and accorded "significant
weight" to her opinions.   Tr. 34.

> Significant weight is also accorded the opinion of Diana Benton,
> Ph.D., the psychologist who performed a consultative examination
> of the claimant (Ex. B8F).   The claimant reported that she was
> independent in self-care tasks and was able to cook, clean, shop,
> drive and manage her finances.    She reported that she lived with
> her mother, brother and her brother's girlfriend; that she attended
> church weekly and visited with family members once a month.
> The claimant was well-oriented and demonstrated logical thought
> content and process with no evidence of delusions or perceptual
> abnormalities.    Dr. Benton opined that the claimant appeared to
> have limitations in the areas of understanding and interpersonal
> interaction but opined that the claimant appeared to lack motivation
> to work, to engage in mental health treatment, or to change her

situation in anyway [sic].    Based on these factors, Dr. Benton
opined that the claimant's prognosis to obtain and maintain
employment seemed poor at the time.    Dr. Benton's opinions are
consistent with the established RFC as they are supported by the
claimant's reports of her daily activities and social functioning.    The
claimant reported that she lived with several family members,
visited her aunt and uncle, and went to the store.    The claimant
also reported that she could independently perform daily activities
like driving, cooking, cleaning and managing her finances.
Significant weight has been given to the opinion of Dr. Benton as
she has based her opinions upon her comprehensive examination
of the claimant and a thorough review of the records.    Moreover,
the opinions of Dr. Benton are consistent with the other substantive
medical evidence of record, including the opinion of Dr. Balbis.

Tr. 34.[8]

The record contains office treatment records from Meridian from

January 31, 2014, to July 17, 2015.   Tr. 706-30.   During this time, Plaintiff

was seen by several healthcare providers including several Advanced

Registered Nurse Practitioners (ARNP).   Tr. 706-23.   The ALJ noted that

in January 2014, Plaintiff had her first visit with Linda Skalsky, MSN.   Tr.

32, 727-30.   After receiving a personal history from Plaintiff,

Ms. Skalsky assigned Plaintiff a Global Assessment of Functioning score of

50, Tr. 730, indicating serious symptoms and limitations of functioning.[9]

---

[8]    The ALJ noted in earlier findings that testing revealed a full-scale IQ of 74.
Tr. 31.

[9]    The ALJ considered this score.   Tr. 32, 35.   The American Psychiatric

Tr. 32.   The ALJ gave "[l]ittle weight" to the opinion of Ms. Skalsky as she

"is not an acceptable treating source as defined by SSR 06–03P."[10]

---

Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000), includes the scale that is primarily used by mental health practitioners.   The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure."   *See* DSM-IV-TR 32-34.   The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.   *Id.*   *See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing GAF scale).   A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning.   DSM-IV-TR 34.   A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   *Id.*   The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"   Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).   In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (5th ed. 2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.   In order to provide a global measure of disability, the WHO Disability Assessment Schedule (WHODAS) is included, for further study, in Section III of DSM-5 (see the chapter "Assessment Measures").   DSM-5 at 16; *see* Finley v. Colvin, Civil Action No. 3:12-7908, 2013 WL 6384355, at *23 n.9 (S.D. W.Va. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool.").

   [10]   The ALJ noted that Plaintiff was treated with medication and reported improved symptoms during a follow-up appointment in August 2014 and further noted that in December 2014, Plaintiff reported that she was enjoying her program at the Leon County Association for Retarded Citizens and enjoyed learning to cook. Tr. 32; *see* Tr. 717 (Oct. 3, 2014), Tr. 721 (Apr. 3, 2015)).   On July 17, 2015, Plaintiff was examined by Ms. Skalsky, although in the capacity as an ARNP, not an MSN. Tr. 726.   Ms. Skalsky observed, in part, that Plaintiff's activity was normal; she was cooperative and her speech was normal; her thoughts were concrete and content was within normal limits; she reported no hallucinations; symptoms of mild depression were noted and she was mildly irritable; her affect was in full range, appropriate, and was congruent to mood, and her memory was grossly intact.   Her estimate of intelligence was "JVR or above," and her insight and judgment were fair.   Tr. 724-25.   The

Tr. 35.

On October 8, 2015, Plaintiff underwent a vocational rehabilitation

evaluation with Dr. Stahl.   Tr. 32, 731-37. After considering Dr. Stahl's

evaluation, the ALJ gave "[s]ignificant weight"

> to the opinion of Dr. Stahl, who performed a vocational rehabilitation
> examination of the claimant (Ex. B21F).   Dr. Stahl recommended
> counseling and medication management.     The client reported
> motivation for engagement in services and Dr. Stahl opined that
> part-time job placement appears feasible concurrent with
> participation in counseling as outlined below for support and
> development of appropriate coping skills to deal with stressors and
> her notable anxiety.   Dr. Stahl recommended low stress work with
> limited public interactions.   Significant weight has been given to the
> opinion of Dr. Stahl as she has based her opinions upon her
> comprehensive examination of the claimant.   Moreover, the
> opinions of Dr. Stahl are consistent with the other substantive
> medical evidence of record.

Tr. 35; *see* Tr. 32 (additional ALJ findings).   As part of her

recommendations and as noted by the ALJ, Dr. Stahl also stated, in part:

"There is concern about the client's ability to sustain fulltime employment

at the current time.   Jobs related to low stress and limited public

---

diagnoses included unspecified bipolar and related disorder.   Tr. 725.   Ms. Skalsky
noted recent severe stressful events/problems; a decline in the patient's condition
and/or an increase in symptoms or side effects; a continuation of mood swings and a
complaint of side effects with Lithium; and medicines were adjusted. Plaintiff was to
return in 3 months.   *Id.*   Plaintiff was advised, in part, "to not stop treatment without
contacting Meridian."   There is no mention of limitations on Plaintiff's ability to work.
Tr. 724-26.   This was Plaintiff's last visit with Ms. Skalsky.   *See* Tr. 706-23.

interactions are recommended given her tendency for anxiety in social

interactions and situations."   Tr. 736.   (As noted herein, the Appeals

Council adopted the RFC posed by the ALJ to the vocational expert during

the January 13, 2016, hearing, "as the additional functional limitations of

'no exposure to the public, only occasional collaboration with coworkers

and supervisors' [that] more fully accommodate the claimant's moderate

difficulties in social functioning."   Tr. 6; *see supra* at 6-7, 10-11, 13, 16, for

the Appeal Council's modified RFC determination.)

Further, the ALJ gave "significant weight" to the December 24, 2012,

opinion of State agency evaluator, Dr. Buffone.   Tr. 34-35, 598-615.   The

ALJ noted that Dr. Buffone "reviewed the records and issued an opinion

consistent with the record as a whole."[11]   Tr. 35.

---

[11]   In his consultant's notes, Dr. Buffone referred, in part, to Dr. Benton's psychological evaluation.   Tr. 614.   Dr. Buffone ultimately concluded that mild-to-moderate functional limitations may be present as stated in his Mental Residual Functional Capacity Assessment wherein he noted in part that although Plaintiff "will likely have difficulties with tasks involving complex mental demands," she "remains capable of carrying out simple instructions and tasks (as evidenced in ADL's) in a structured, supportive setting.   Claimant may have problems with intense and prolonged social contact but remains able to relate appropriately on a limited basis (ex. shops, goes to church, sees family/trters.).   Claimant will have difficulties with high stress and demand situations and with extensive travel to unfamiliar locations alone."   Tr. 600.   These factors were considered by the ALJ and the Appeals Council and "accommodated for in the RFC above."   Tr. 4-7, 34-35.

Plaintiff refers to a vocational evaluation conducted on December 29, 2015, by Sarah E. Johnson, M.Ed., CVE, Tr. 446-55.   ECF No. 19 at 7-8, 25.   It does not appear the ALJ considered this evaluation when determining Plaintiff's RFC.   Tr. 30-35.   Nevertheless, it appears that Ms. Johnson is not a psychologist.   As noted by the Acting Commissioner, a vocational evaluator is not an acceptable medical source.   ECF No. 22 at 12-13; *see* 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5) (providing that licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists are acceptable medical sources). Evidence from "other sources," including chiropractors, therapists, physicians' assistants, and nurse practitioners, however, may be considered "to show the severity of [the claimant's] impairments and how it affects [the claimant's] ability to work."   20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1).   Only an acceptable medical source can establish the existence of a medically determinable impairment and give medical opinions.   20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2).   ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's]

symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.*)    Although Ms. Johnson does "not feel [Plaintiff] is employable without the assistance of others," according to the ALJ and Appeals Council, acceptable medical sources of record did not opine that Plaintiff's limitations were in excess of the RFC determined by the Appeals Council when the record was reviewed as a whole.   *See supra* at 6-7, 10-11, 13, 16, for the Appeal Council's modified RFC determination.

As noted above, medical source opinions were considered when the RFC was determined.   The RFC determination, however, is reserved to the Acting Commissioner as an administrative finding that does not necessarily need to mirror the opinion of a treating, examining, or reviewing source if the record supports the RFC determination as here. *See supra* at n.2.

Plaintiff did not show that her impairments resulted in limitations in excess of the RFC for a modified range of work at all exertional levels with non-exertional limitations to account for her mental impairments.   *See* Moore, 405 F.3d at 1213 (explaining that even if the record could support a different RFC, when based on substantial evidence, the Commissioner's

determination will not be disturbed).

Finally, at step 5, the ALJ elicited testimony from a vocational expert as to whether Plaintiff could perform other jobs that exist in significant numbers.   Tr. 6-8, 83-84; *see supra* at 14-15.   In response to a hypothetical question adequately portraying Plaintiff's impairments and limitations, the vocational expert testified that Plaintiff was able to perform representative jobs that exist in significant numbers in the national economy.   *Id.*   To this end, the Appeals Council expressly relied on this testimony when it modified the ALJ's RFC determination and the representative jobs that Plaintiff could perform.   Tr. 4-8; *see* 20 C.F.R. §§ 404.1566(e); 416.966(e) (the Commissioner may use a vocational expert to determine whether a claimant can perform other work that exists in the national economy); Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1270 (11th Cir. 2007) (a vocational expert's response to a valid hypothetical constitute substantial evidence supporting the denial of disability benefits).

The ALJ and the Appeals Council reviewed the relevant evidence in this record and Plaintiff does not argue that they did not do so.   The Appeals Council ultimately determined that Plaintiff's disability ended on

October 1, 2012, and that she had not been disabled since that date.

Tr. 8.   Substantial evidence supports this determination.

## V.   Conclusion

Considering the record as a whole, the findings of the ALJ and the Appeals Council are based upon substantial evidence in the record and the ALJ and the Appeals Council correctly followed the law.   Pursuant to 42 U.S.C § 405(g), it is respectfully recommended that the Acting Commissioner's decision to terminate Plaintiff's Social Security benefits effective October 1, 2012, be **AFFIRMED** and the Clerk be directed to enter judgment for the Acting Commissioner.

**IN CHAMBERS** at Tallahassee, Florida, on December 18, 2017.

s/   **Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or**

issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.